UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVESTER K. KILGORE,

    Plaintiff,                                    Civil Action No. 06-11066

v.                                              HON. JOHN CORBETT O'MEARA
                                                  U.S. District Judge
                                                  HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL               U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sylvester K. Kilgore brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On February 27, 2004, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset of disability date of January 1, 2003 (Tr. 39-41). After the initial denial of his claim, Plaintiff filed a request for an administrative hearing, held on September

13, 2005 in Jackson, Michigan before Administrative Law Judge (ALJ) Brent Rogozen (Tr. 260). Plaintiff, represented by attorney Charles A. Robison, testified (Tr. 262-280). On October 17, 2005, the ALJ found that Plaintiff was able to perform his past relevant work as an assembler, janitor, and machine operator (Tr. 20). On February 16, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review on March 13, 2006.

## **BACKGROUND FACTS**

Plaintiff, born July 29, 1970, was age 35 when the ALJ issued his decision (Tr. 39). He completed 10th grade and worked formerly as an assembler, car wash attendant, full order cook, installer, janitor, machine operator, and train dispatcher (Tr. 78, 82). Plaintiff alleges disability due to depression and anxiety (Tr. 77).

### A. Plaintiff's Testimony

Plaintiff, age 35 at the time of hearing, testified that he was married but separated, stating that he lived in an apartment in Jackson, Michigan (Tr. 263). Plaintiff, right-handed, indicated that he had stopped school after completing 10th grade, adding that despite experiencing a learning disability, he could read, write, and handle his own finances (Tr. 264-265).

Plaintiff has alleged disability since January 2003 as a result of depression and anxiety (Tr. 265-266). He admitted a 20-year history of drug abuse, testifying that for the past year he had been "clean" (Tr. 266-267). Plaintiff stated that at present, his work efforts were limited to mowing one lawn per week (Tr. 267). He indicated that he had attempted suicide on several occasions, including one time since he had discontinued illicit drug use

(Tr. 268).

Plaintiff reported taking Zyprexa and Paxil for mental problems, adding that Zyprexa created drowsiness (Tr. 269). He testified that his dose of Paxil was increased after he had again begun to experience suicidal thoughts (Tr. 269-270). Plaintiff indicated that he had attempted to "get rehabilitated and hold a job" without success (Tr. 270). He estimated that he experienced three to four "bad days" per week at which time he lacked the motivation to get out of bed (Tr. 271-272). He reported that he had not seen his minor children or former wife in over two years, indicating that he did not pursue visitation rights on the basis that the probable custody battle would be detrimental to his sons, 10 and 11 (Tr. 273).

Plaintiff attributed his choice of disability onset date of January 1, 2003 to the fact that he became suicidal after being denied access to his children over the Christmas holidays (Tr. 274-275). He alleged that he slept poorly a portion of the time, did not drive (due to his inability to afford a car) and relied on an "advocate" supplied by his drug rehabilitation providers for transportation (Tr. 277). Plaintiff reported that he had undergone inpatient treatment at the beginning of his most recent rehabilitation (Tr. 277).

### B. Medical Evidence

#### i. Treating Sources

October, 1987 correspondence indicates that Plaintiff failed several high courses due to excessive absences (Tr. 217). Plaintiff, a remedial student, was certified as learning disabled (Tr. 217). In April, 2001, he sought emergency treatment for amphetamine abuse (Tr. 229). Shaun Huang, M.D., opining that he was "medically cleared," referred him for

substance abuse counseling (Tr. 230). Counseling discharge notes by Samy Wassef, M.D., made 21 days later, found the presence of "ephedrine induced anxiety disorder," noting an "unremarkable" stay after showing improvement (Tr. 231). He assigned Plaintiff a GAF of 55[1] (Tr. 231, 234). Plaintiff was referred to AA and NA (Tr. 231). In July, 2001, Plaintiff received a GAF of 60 (Tr. 235).

In January, 2003 Plaintiff received a prescription for Zoloft after contemplating suicide (Tr. 124-125). He reported a change in eating and sleeping patterns, anger, depression, and anxiety after being laid off from his job (Tr. 124-125). Plaintiff indicated that he wanted to find a new job rather than collect unemployment (Tr. 125). Treatment notes from his mental evaluation indicate that Plaintiff was "alert and oriented to person, place, and time," but "presented with a depressed as well as anxious affect" (Tr. 126). Noting that Plaintiff currently experienced "[r]elationship problems" along with "loss of employment," Barbara Watson, a nurse practitioner assigned him a GAF of 49[2] (Tr. 126-127). In August, 2003, Plaintiff reported significantly reduced levels of anger, depression, but a continued high anxiety level (Tr. 122). Watson prescribed Paxil (Tr. 123). The next

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* ) (4th ed.2000).

month, Plaintiff reported that group therapy for depression had been "very helpful," and that he was currently working with a job skills coordinator (Tr. 120). In December, 2003 Plaintiff sought emergency treatment after cutting himself with a razor blade (Tr. 244). Later the same month, Plaintiff sought treatment requesting "detox" for amphetamine abuse (Tr. 246).

In January, 2004, a "Psychosocial Assessment" indicated that Plaintiff experienced a relapse from drug addition recovery in April, 2003 when he abused amphetamines, noting that he became depressed at the beginning of 2003 after losing his job and breaking up with his girlfriend (Tr. 135). Plaintiff stated that he had disliked factory work but enjoyed janitorial tasks (Tr. 137). He received a GAF of 40 (Tr. 140).[3] April, 2004 treating notes by Dr. Wassef indicate that Plaintiff relapsed from a recovery from cocaine addiction (Tr. 142, 248). Wassef referred Plaintiff to drug rehabilitation, assigning him a GAF of 55 (Tr. 144).

In June, 2004, treating notes by Christina Zachar, M.D., indicate that Plaintiff's "attention, orientation, and memory seemed intact," noting that his depression had been "resolved" (Tr. 198). In August, 2004, Zachar recorded that Plaintiff had recently made a suicide gesture by "superficially" cutting his arms and calling for help (Tr. 195, 251, 253). Plaintiff reported depression after an altercation with his girlfriend and the recent death of a cousin (Tr. 195). The next month, Plaintiff told Zachar that he was "doing well" and

---

[3]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*) (4th ed.2000).

attending NA and AA meetings on a regular basis (Tr. 194). February, 2005 treating notes indicate that Plaintiff had been clean for eight months (Tr. 187). Zachar assigned Plaintiff a GAF "equal to 50" (Tr. 188).

In March, 2005 an "Activities of Daily Living Assessment" found that Plaintiff continued to care for his personal needs, manage money, and exhibit time management skills (Tr. 165). Plaintiff expressed the desire for a part-time job and personal happiness (Tr. 166). The report assigned Plaintiff a GAF of 40 (Tr. 181). A September 6, 2005 assessment of Plaintiff's work abilities concluded that he possessed a "fair" ability to deal with workplace stress or understand detailed instructions (Tr. 201). The report, created by a "team clinician," concluded by stating that Plaintiff experienced "difficulty managing time appropriately"[4] (Tr. 202). A Psychiatric Review Technique by the same clinician, also dated September 6, 2005, found the presence of affective and personality disorders (Tr. 203). Under the "B" criteria, Plaintiff was found to experience moderate restrictions on activities of living and maintaining concentration, persistence, and pace along with marked difficulties in maintaining social functioning (Tr. 213). Under the "C" criteria, the report found that Plaintiff had experienced "[R]epeated episodes of decompensation . . . of extended duration" (Tr. 214).

### ii. Non-examining Sources

A Psychiatric Review Technique dated April 19, 2004 by William Schirado, PhD., on

---

[4]Plaintiff later identified the clinician as Floyd Hostle. *Plaintiff's Brief* at 12.

behalf of the SSA found the presence of affective disorders under Listing 12.04 (Tr. 150). Based on treating source material, Schirado found that Plaintiff experienced mild restrictions in activities of daily living and maintaining social function as well as mild restrictions in maintaining concentration, persistence, or pace (Tr. 160). The report concluded by noting that although Plaintiff previously experienced depression, the condition became non-severe within one year of onset[5] (Tr. 162).

### C. Vocational Expert Testimony

The administrative hearing did not include vocational testimony.

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Rogozen determined that Plaintiff experienced the severe impairment of mild depression, but found that the condition did not meet or medically equal the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 15). The decision also noted that Plaintiff had "a history of drug and alcohol abuse" which did not impair his work-related abilities (Tr. 15).

The ALJ found the absence of exertional limitations, concluding that Plaintiff retained the residual functional capacity ("RFC") to perform "simple, repetitive tasks," including his past relevant work as an assembler, machine operator, and janitor" (Tr. 20).

The ALJ rejected Plaintiff's allegations of complete disability "in light of discrepancies between [Plaintiff's] assertions and information contained in the reports of the

---

[5]As discussed *infra*, a claimant must establish that the condition led to continuous disability for a minimum of 12 months. 42 U.S.C. §423(d)(1)(A).

treating and examining physicians" (Tr. 19). He pointed out that Plaintiff told his treating psychiatrist that he performed seasonal landscaping work, noting that although Plaintiff's yard work did not qualify as substantial gainful activity, it stood at odds with Plaintiff's alleged degree of limitation (Tr. 19). The ALJ also cited Plaintiff's testimony that he was unmotivated to get out of bed three to four days a week, finding that Plaintiff's alleged level of disability was contradicted by record evidence (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Listings 12.04 and 12.08

Plaintiff argues first the ALJ erred in finding that his condition did not meet or equal the criteria of Listings 12.04 (affective disorders) and 12.08 (personality disorders). *Plaintiff's Brief* at 12. He contends that the ALJ improperly discounted the September, 2005

Psychiatric Review Technique (" PTRF") by social worker Floyd Hostle, showing that Plaintiff's "marked" social limitations, along with repeated episodes of decompensation, qualified him for disability benefits at Step Three of the administrative analysis. *Id*. at 13. Although apparently conceding that the social worker's findings are not entitled to the deference accorded a treating physician's opinion, Plaintiff argues that pursuant to SSR 06-3p, the ALJ did not conduct an adequate review of Hostle's conclusions. *Id.*

Pursuant to 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), only "acceptable medical sources" can render medical opinions. "Acceptable medical sources" are limited to physicians, psychologists, optometrists, podiatrists, and speech pathologists. 20 C.F.R. §§404.1513 (a); 416.913(a). However, SSR 06-3p notes that in the face of rising health costs in recent years,

> "medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."

2006 WL 2329939, *3. Among the factors to be considered in evaluating an opinion from "non-acceptable" sources include the length and frequency of treatment, its consistency with other evidence, the extent to which the opinion itself provides supporting evidence, and the source's expertise in the condition at issue. *Id*. at 4-5. However, the Ruling points out that "not every factor for weighing opinion evidence will apply in every case" adding that "[t]he

-10-

evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.*

The Plaintiff's argument is based on the false premise that the ALJ impermissibly rejected the social worker's report simply because it found the presence of borderline personality traits, an affective disorder, and a personality disorder. *Plaintiff's Brief* at 13-14. As discussed by Plaintiff, these finding are supported at least in part by treating records. However, contrary to Plaintiff's claim, the ALJ instead rejected the *degree* of limitation found by the report rather than of the presence of the above conditions, finding that Hostle's findings were "extreme" (Tr. 18). Moreoever, in conformance with the factors listing in SSR 06-3p, the ALJ correctly noted that the report did not state Hostle's role in Plaintiff's treatment and further omitted the duration (if any) of the treating relationship. While Plaintiff argues correctly that Hostle's findings overlap the conclusions of his treating physician, the ALJ permissively rejected the social worker's report on the basis that it found a severity of limitation contradicted by substantial evidence contained in the transcript.

### B. Residual Functional Capacity ("RFC")

Plaintiff again contends that the ALJ created reversible error by rejecting Hostle's opinion that he experienced "moderate" and "marked" work-related limitations. *Plaintiff's Brief* at 15. He maintains that this error is coupled with the ALJ's failure conduct "a narrative discussion" justifying the ultimate Residual Functional Capacity ("RFC") contrary

to the requirements of SSR 96-8p.

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, at 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once [his] limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). It is measured by a common sense approach viewing a plaintiff's condition as a whole. *Paris v. Schweiker,* 674 F.2d 707, 710 (8th Cir. 1982). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Plaintiff's argument fails for two reasons. First, ALJ Rogozen conducted a more than adequate discussion of Plaintiff's work-related limitations. The administrative decision includes a comprehensive four-page review of Plaintiff's social and medical history. Further, the RFC composed by the ALJ is directly preceded by a half-page rationale for adopting only a portion of Plaintiff's alleged limitations.

Second, even assuming that the ALJ had submitted only a cursory analysis of Plaintiff's work-related abilities, this, in and of itself, does not present grounds for remand. "Although SSR 96-8p requires that the RFC must assess [a] claimant's work-related abilities on a function-by-function basis, there is case law that the ruling does not require ALJs to produce such a detailed statement in writing." *Edwards v. Barnhart*, 383 F.Supp.2d 920, 929 (E.D.Mich.,2005)(internal citations omitted)(quoting *Delgado v. Comm'r of Soc.Sec.,* 30 Fed.Appx. 542, 547-48 (6th Cir.2002)). The administrative analysis, culminating in an RFC

limiting Plaintiff to "simple, repetitive tasks" is sufficient, and does not present grounds for remand.

### C. The Grids

Finally, Plaintiff alleges that the ALJ's Step Four decision is tainted by the absence of vocational expert testimony. *Plaintiff's Brief* at 17-18. He contends that the administrative decision omitted an "adequate analysis" of his past work duties. *Id*. at 18.

While generally at Step Four, the ALJ *may* consult a VE "to resolve complex vocational issues," *Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir. 2003) (emphasis added) the use of a VE is not required to reach a Step Four determination and is thus not fatal to the administrative decision. The ALJ is not required to pose a hypothetical question or even consult a VE in making a Step Four determination. "At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ." *Id.* (internal citations omitted). Plaintiff's contention is apparently based on the erroneous assumption that because vocational testimony would be required on the basis of his non-exertional mental limitations in a *Step Five* finding, that it is also applicable to the present Step Four determination.[6]

---

[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15 direct that if a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper. "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). However, the Regulation and Ruling's allusion to "other work" clearly refers to a Step Five determination which is made after the ALJ has found at Step Four that a claimant

In addition, the ALJ's finding that Plaintiff could perform his past relevant work stands well-supported by record evidence. Dr. Zachar noted in 2004 that Plaintiff's "attention, orientation, and memory seemed intact" (Tr. 198). Plaintiff acknowledged that he performed yard-work on a regular basis (Tr. 267). He expressed the desire to find work to his medical providers, attributing his depression in part to the fact that he was no longer employed (Tr. 124-125). He acknowledged further that he had enjoyed performing his former work as a janitor (Tr. 137). In March, 2005 Plaintiff stated that one of his goals was to work (Tr. 166). Further, while the administrative record shows the presence of learning disabilities, substance abuse, and depression, Plaintiff, now 36, expressed ambivalence at the hearing about his need for benefits, concluding his testimony by indicating that he did not anticipate an award of benefits, stating that he would "move on" if his application was not successful (Tr. 278-279). While of course, this testimony, by itself, does not establish non-disability, his statement, along with substantial evidence found throughout the record, supports the administrative conclusion. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision was within the "zone of choice" accorded the fact-finder, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

---

is unable to perform his past work.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 16, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 16, 2007.


                                                S/Gina Wilson
                                                Judicial Assistant